Rachel Meyer, as Administratrix, etc., of Harry Meyer, Deceased, Respondent, *v.* Louis Meyer and Isaac Meyer, Appellants.

Second Department, June 9, 1922.

Partnership — fraud and deceit — action by administratrix of deceased partner to set aside agreement fixing share of estate of deceased in partnership on ground of fraud and for accounting — no fraud found — incorrect statement by surviving partners as to amount of profits after death of deceased partner — false statement as to rights of administratrix in such profits — surviving partners became trustees for winding up partnership and bound fully to disclose partnership affairs, to recognize interests of estate and to account for profits on equitable principles — agreement set aside as to certain particulars and accounting on equitable basis ordered.

In an action by an administratrix of a deceased partner against two surviving partners to set aside, on the ground of fraud, an agreement between the plaintiff and the defendants fixing the amount due the estate of the deceased from the partnership, and for an accounting, a finding of fraud is not justified, where it appears that the plaintiff's intestate died on January 19, 1917; that the plaintiff did not take out letters of administration until April, 1918; that the defendants regularly paid the plaintiff a weekly sum, which was charged to the account of salary, from the date of the death of the deceased; that prior to the making of said agreement the defendants allowed an examination of the partnership books by an expert accountant employed by the plaintiff; that the agreement provided for the payment, as the capital of the deceased in the firm at the time of his death, of a sum stated upon the balancing of the books on December 26, 1916, the interim profits being recorded as part of the profits for the year 1917; that the agreement also provided for the payment of a further sum, which was somewhat less than twenty-five per cent of the profits for the year 1917, although stated to be twenty-five per cent, which sum was stated to be a voluntary payment, and not made because there was any liability on the part of the defendants to account to the plaintiff for said profits; that the agreement further provided that the plaintiff should be paid in installments in such amounts as might be agreed upon or such as might be convenient for the defendants to pay; and it also appears that there was no credit given for insurance money collected by the defendants in 1918 for damage by fire in 1917 and that the inventories were taken at cost and not at market value which was

increasing, this being in accordance with the usual custom and known to the plaintiff's agent.

However, upon principles of equity the agreement should be set aside in so far as it states the interest of the plaintiff in the profits for the year 1917, as upon the death of plaintiff's intestate the surviving partners became vested with the legal title to the property as trustees for the purpose of winding up the affairs of the partnership. Since they elected to continue the business using the capital of the estate, the plaintiff had the option, when the time for settlement came, either to demand interest upon the amount of the capital of the estate or to require the defendants to account for a reasonable share of the profits of the business. The statement, therefore, in the contract that they were under no obligation to account to the plaintiff for her share of the profits of 1917, was a false, as distinguished from a fraudulent, representation of the legal status and it may be assumed that it had an influence upon the mind of the plaintiff in inducing her to execute the agreement. It may be said, therefore, that the plaintiff signed the instrument under a mistake as to her legal rights, and this justifies the correction of the wrong by a court of equity.

The reasonable share of the profits was not necessarily forty per cent, although that was the share to which the plaintiff's intestate was entitled during his lifetime, for the defendants no longer had his aid in the business. The amount should be ascertained on equitable principles so as to do justice between the parties, having in view a fair compensation to the defendants for their personal efforts in carrying on the business and the relation which the share of the estate of the deceased in the capital bore to the total amount of the capital invested in the business.

APPEAL by the defendants, Louis Meyer and another, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 14th day of July, 1921, upon the decision of the court rendered after a trial at the Kings Special Term.

The judgment set aside an agreement between plaintiff and defendants on the ground that it was obtained by fraud, and directed defendants to account to plaintiff for the share of plaintiff's intestate in the copartnership of Meyer Brothers, together with forty per cent of the profits of the business from the date of his death to the date of the entry of the judgment, and also for a share of the good will of the business.

The defendants, Louis Meyer and Isaac Meyer, and plaintiff's intestate, Harry Meyer, were partners in the business of manufacturing " pants." Harry Meyer, the plaintiff's intestate, died on the 19th of January, 1917. On the 30th of April, 1918, an agreement was made between defendants Louis Meyer and Isaac Meyer, and the plaintiff, as administratrix of the estate of Harry Meyer, deceased, whereby the interest of Harry Meyer in the firm at the time of his death was settled and adjusted at the sum of $21,578.12. The agreement further provided that in addition to this sum of money the surviving partners agreed to pay the administratrix the sum of $6,018.51, stated to be twenty-five per cent of the net

profits of the firm for the year 1917. The agreement stated that the payment of $6,018.51 was a voluntary payment, without acknowledgment of any liability to the estate, and that it was made " solely to further assist the administratrix and the children of said Harry Meyer, deceased." The agreement further provided that plaintiff should accept the sum of $27,596.63 in installments, " in such amounts as may be agreed upon or such as may be convenient for the parties of the first part to pay to the party of the second part," and that the payment might be made in Liberty bonds, which " shall be accepted by the party of the second part, the same as if the amount was paid in cash to her." Upon the execution of the agreement the defendants paid on account thereof to the plaintiff the sum of $2,000 in cash and $1,000 in Liberty bonds at their face value. On March 24, 1920, nearly two years after the execution of the agreement, this action was brought to set it aside as induced by fraud, and to compel defendants to account for the interest of decedent's estate in the firm. Meanwhile, after the execution of the agreement and before the action was brought, the defendants had paid the amount provided for in the agreement except the sum of about $10,940.88, which was tendered by defendants to the plaintiff in a certified check, but which she refused to accept.

The court found that the agreement was induced by the fraud of the defendants. It directed the entry of a judgment setting aside the agreement as fraudulent, adjudging that plaintiff is entitled to forty per cent of the profits of the business down to the date of the death of Harry Meyer, and from the date of his death down to the " present time; " and that defendants should account to plaintiff for the assets, property and capital of the partnership down to the date of the death of Harry Meyer, and from the date of his death down to the " present time," and also for the profits of the partnership during said period, and also the good will of said partnership. From that judgment defendants appeal to this court.

*Louis Marshall*, for the appellants.

*Robert H. Wilson*, for the respondent.

Blackmar, P. J.:

I have reached the conclusion that defendants did not intend to defraud the plaintiff by the agreement which purported to settle the affairs of the partnership between defendants, as surviving partners, and the plaintiff, as the representative of the estate of the deceased partner. They evidently believed that they were settling with the plaintiff not only justly but generously; and yet I think that on principles of equity the settlement may be set aside

in so far at least as it adjudicates the interest of the estate in the profits of the business subsequent to the death of plaintiff's intestate.

I will first state my reasons for thinking that defendants did not intend to defraud the plaintiff. Defendants and plaintiff's intestate were brothers. The business was begun in a small way by defendant Louis Meyer in 1901. Shortly thereafter the plaintiff's intestate was admitted to partnership, and later defendant Isaac Meyer became a partner. The business was small and the earnings but little until the beginning of the World War, when it assumed progressively greater proportions and became very profitable. Plaintiff's intestate died on the 19th day of January, 1917. Prior to his death he was entitled to forty per cent of the profits, defendant Louis Meyer to forty per cent, and defendant Isaac Meyer to twenty per cent. They were each entitled to draw, during the year 1916, the sum of forty dollars a week as salary, but it was not all drawn. On the death of her intestate the plaintiff desired to have herself substituted as a partner, but was informed that that was impossible. Nevertheless for over a year no efforts were made to settle the estate, and defendants, the surviving partners, continued the business and paid her a small weekly allowance which they charged to salary account, although the plaintiff did nothing to earn the salary. Before the end of the year, after the death of plaintiff's intestate, the plaintiff was advised to have an expert accountant examine the books, and she employed a competent, certified public accountant, who spent several weeks in a critical and careful analysis of the books and made an elaborate report to the plaintiff. In April, 1918, plaintiff took out letters of administration on her husband's estate, and on April thirtieth the contract was made which has been set aside as induced by fraud. An inventory had been taken and the books of the firm had been balanced on the 26th of December, 1916, and as of that date the capital account of the decedent, as stated upon the books of the company, was $21,578.12, and there is nothing in the case to show that such figures were false.

The contract adopts these figures as the amount of the interest of plaintiff's intestate in the firm at his death. This is not an accurate statement, for certain profits had been earned by the firm between the date when these figures were ascertained and the date of the death of plaintiff's intestate, some three weeks later. One of the findings imputing fraudulent intent to the defendants is based upon this fact. But the agreement on its face states that the figures were ascertained as of December 26, 1916, and all the information on this subject was in the possession of the certified public accountant and had been reported to plaintiff. The small

amount of the interim profits, with which the estate should have been credited, amounting to about $494, was recorded as part of the profits for the year 1917.

The plaintiff had an adviser, Anenberg, who had recommended the certified public accountant to her and who, with the accountant, was present with her at the time the contract was executed. No objection was made to the amount of the interest of the decedent in the firm as stated in the account, but the plaintiff, Anenberg and the accountant did object to the allowance made to the plaintiff on account of the profits for the year 1917. The plaintiff claimed that she was entitled to forty per cent of the profits for that year. Defendants objected that they had not had the advantage of the services of the decedent during that year, and that, therefore, the share of the profits should be less. There was some discussion and persuasion on the part of defendants to induce the plaintiff to sign. She was advised not to sign by her friend Anenberg, but to submit the matter to a lawyer. She decided, however, to disregard the advice, and signed the instrument.

The agreement provided that there be added to the amount of decedent's interest as ascertained on December 26, 1916, the sum of $6,018.51, said to be twenty-five per cent of the profits for the year 1917, and recited that this was because of no obligation on the part of the surviving partners, but was a voluntary payment to assist the administratrix and the children of the deceased partner. There is no reason to think that defendants appreciated that they were under any obligation to pay part of the profits for the year 1917, for they had been advised to the contrary. I think that defendants believed that in making this provision they were giving plaintiff a reasonable and just compensation for the use of the capital of decedent in the business during the year 1917. It seems to me that a finding of fraudulent intent on their part is not consistent with the fact that they had openly disclosed their books to the public accountant employed by the plaintiff, nor with the fact that they had been paying the plaintiff a certain weekly sum, stated in the evidence to be twenty-five dollars a week, but appearing from certain of the exhibits to be fifteen dollars a week from February 3, 1917, to May 4, 1918, and twenty-five dollars a week thereafter, and charging the same, not against the interest of the estate, but against the salary account.

It is true that according to the record $6,018.51 is not twenty-five per cent of the profits for the year 1917. The amount of the profits for that year, according to the books of the firm, after deducting about $50 a week for the salary of each of the surviving partners, and the amount of the income tax, was $32,457.81. One-quarter

of this sum is $8,114.45, and not $6,018.51. The difference between these two sums is claimed by the appellants in their brief to represent the drawings of the plaintiff upon the capital account during the year 1917, but I find no record of such drawings exceeding the sum of $1,458.13. But however this amount was reached, there was no concealment and the books were opened to plaintiff's accountant. No inference of fraudulent intent can be drawn from this variation in amounts.

Neither do I find that any fraudulent intent could be inferred from the fact that there was no credit for the insurance money collected. The property was damaged by fire in November, 1917, but when the accounts were made up for the year the inventory was taken at its full cost value and the insurance money was collected in the year 1918.

The inventories were taken at cost, and not at market value which was increasing. This again was known to plaintiff's agent. It accorded with the usual custom, and if the profits for one year were, therefore, conservatively stated, those of the next year compensated.

Upon these facts there is no room for an inference that defendants intended to defraud the plaintiff in the settlement of the accounts.

I think, however, that upon principles of equity this account should be set aside in so far as it states the interest of the plaintiff in the profits for the year 1917. Upon the death of the partner the surviving partners became vested with the legal title of the property. They held it, however, as trustees for the purpose of winding up the affairs of the partnership and paying off the interest of decedent's estate. This was an active duty that the law imposed upon them. The fact that the plaintiff delayed in securing appointment as administratrix of the estate did not in any way relieve them from the performance of this duty. Their plain legal duty was to proceed to wind up the affairs of the partnership, to liquidate it, and to pay the amount of the estate. They were very loath to take this course, and reasonably so; for the business was a growing and a profitable one and to liquidate it at that time would have involved loss, not only to themselves but probably to the estate. They, therefore, continued the business, using the capital of the estate and paying the widow a certain dole per week, which they charged to the salary account. Under these circumstances, when the time for adjustment came, the representative of the decedent's estate had the option either to demand interest upon the amount of the capital of the estate which defendants were using or to require them to account for a reasonable share of the profits of the business. (Story Partnership [7th ed.], § 343.) As trustees the defendants were bound to the utmost fairness of disclosure and to a recognition of the interests of the estate as defined by law. The statement in the con-

tract that they were under no obligation to account to the plaintiff for a share of the profits for the year 1917, but that they allotted her one-quarter of the profits as a gratuity for the benefit of the widow and orphans, was not in accordance with the principles of law governing the relations of the parties. The contract, therefore, drawn by defendants' counsel, contained an incorrect representation of the law. It was a false, as distinguished from a fraudulent representation of the legal status. It may be assumed that it had an influence upon the mind of the administratrix in inducing her to sign the instrument. It may be said, therefore, that the plaintiff signed the instrument in mistake as to her legal rights, relying upon a false although not fraudulent representation as to the law made by the defendants who occupied towards her a relation of trust and confidence. This justifies a correction of the wrong by a court of equity. (2 Pom. Eq. Juris. § 847.) The defendants were under an obligation, which was repudiated in the contract, to account to the plaintiff for a reasonable share of the profits of the business. This was not necessarily forty per cent, for defendants had no longer the aid of plaintiff's intestate, who had actively participated in the management of the business during his life. The amount should be ascertained on equitable principles so as to do justice between the parties, having in view a fair compensation to the defendants for their personal efforts in carrying on the business and the relation which the share of the decedent's estate in the capital bore to the total amount of capital invested in the business. The representation by the defendants that the plaintiff was not legally entitled to any share in the profits, but was merely the recipient of their bounty, prevented a just and equitable determination of the share of the profits which she was entitled to for the use of the capital of the estate. It will be noted that before determining the profits for the year 1917 the defendants each deducted the sum of $2,600 for salaries for that year, and after such deduction a quarter interest in the profits for the year amounted to $8,114.45. Furthermore, assurances were made to the plaintiff of her future participation in the profits of the business, and the contract was so framed that the amount of the plaintiff's interest in the business was payable in installments only, at the discretion of the defendants, and without interest. Meanwhile plaintiff was paid twenty-five dollars a week, which was charged to salary account. This weekly dole was not paid to her as administratrix, but was given to her personally, and it is obvious that the purpose and intent was to induce her to acquiesce in the retention of this money by the firm.

I have, therefore, reached the conclusion that the agreement

should be set aside in so far as it adjusted the amount of the interest of the estate in the profits for the year 1917, in so far as it provided that plaintiff was entitled to no subsequent profits, and in so far as it authorized the defendants to pay the amount of money found due to the plaintiff in installments in such amount " as may be agreed upon or such as may be convenient " to the surviving partners, and without interest.

The provisions of the judgment that plaintiff is entitled to forty per cent of the profits of the business subsequent to the date of the death of Harry Meyer are erroneous, and in place thereof the judgment should provide that the plaintiff is entitled to such share of the profits of the business for the year 1917 and to the time of the commencement of this action as shall be just and equitable to compensate her for the use of the capital of the estate remaining in the business.

Findings of fact numbered 14, 15, 16, 19, 20, 22, 23, 24, 26, 31, 33, 35 and 39 are reversed; so much of the findings of fact numbered 27 and 28 as impute to defendants any fraudulent intent are reversed; so much of finding of fact numbered 34 as states that the value of the good will is large is reversed, leaving its value to be ascertained on the reference. Such portions of the so-called conclusions of law as attribute to the defendants a fraudulent intent are also reversed. From finding 9 the words " the same as though his death had not occurred " are stricken out. This court finds that the representation that defendants were under no obligation to account to plaintiff for any part of the profits for the year 1917 was false as matter of law, and that the plaintiff, relying upon such representation made by defendants, who were her trustees and under a duty fully to recognize the relations between the parties as fixed by the law, and also upon the representation expressed in finding numbered 9 and the weekly payments of $25 made pursuant thereto, was induced to accept the sum of $6,018.51 as her share of the profits of the year 1917, and to leave her share of the estate at the risk of the business during the pleasure of the defendants without interest.

Defendants' requests to find numbered 9, 12, 13, 14, 16, 19, 20, 23, 24, 25, 28, 30 and 36 are found.

The effect of the action of the parties and of the agreement was to transfer the business to the surviving partners as a going concern, to relieve them from the necessity of winding up and liquidating the business and distributing the avails, and to impose upon them the sole duty of a fair and just accounting for the interest of the estate in the business. This result it is the purpose of this judgment to secure.

The judgment should be modified in accordance with this opinion, and as modified affirmed, without costs to either party as against the other.

Present — BLACKMAR, P. J., RICH, KELLY, MANNING and KELBY, JJ.

Interlocutory judgment modified in accordance with opinion, and as modified unanimously affirmed, without costs. Settle order on notice before the presiding justice.