OPINION OF THE COURT
Albert P. Williams, J.
The plaintiffs move for summary judgment to recover the pension reserve of decedent Mathilda Simon from the defendants. The defendants cross-move for summary judgment dismissing the complaint.
This action was commenced to recover money damages in the amount of $59,825, or such other sum as would reflect the total fixed allowance of Mathilda Simon at the time of her death, on the grounds that defendants unlawfully precluded the decedent Mathilda Simon from changing her retirement plan, and that said defendants *509 negligently misrepresented and advised the decedent of her pension rights.
Defendants, in their answer, deny the commission of any unlawful acts or negligence and allege that at all times they have acted pursuant to the statutory mandates and in accordance with applicable law. Defendants further allege that plaintiffs failed to set forth facts sufficient to constitute a cause of action and failed to comply with section 50-e of the General Municipal Law in that a notice of claim was not served within 90 days after the alleged claims arose and the complaint should be dismissed as a matter of law.
The following material and relevant facts are not disputed among the parties to this action.
Plaintiff’s decedent, Mathilda Simon, first became employed by the City of New York in 1934 with the Department of Social Services. At that time, she also became a member of the New York City Employees’ Retirement System. She worked during various periods for the Department of Social Services. Decedent joined the Teachers’ Retirement System of the City of New York on February 2, 1970, at which time she had prior accredited service of 16 years, 4 months and 20 days. When she became employed by the Board of Education of the City of New York, she also became a member of the teachers’ retirement system: Membership No. 143179.
By application dated February 4, 1970 decedent elected to become a 20-year pension plan member, that is, she elected to be covered under Plan A. The 20-year pension plan is governed by section B20-41.2 of the Administrative Code of the City of New York (hereinafter Administrative Code).
Section B20-41.2 (subd e, par [1]) of the Administrative Code provides that a contributor to the 20-year pension plan may retire from service upon the completion of 20 years of service, after the attainment of age -55 years. Benefit payments under said Plan A are deferred until such time as the contributor would have completed 25 years of service had he or she remained active in service.
*510 On or about February 5, 1970, decedent filed a designation of beneficiary stating that in the event of her death in active service after attaining eligibility for her retirement, the amount payable under Option I of section B20-46.0 of chapter 20 of the Administrative Code would be payable in equal shares to her son Jeffrey Simon and her daughter Ellen N. Sandor.
In response to decedent’s letter dated January 20, 1975 requesting information concerning when she would have achieved 25 years of service with the board of education, the retirement system by Anita Tricarico wrote as follows:
“September 22, 1975
“Based on your service allowance of 16 years, 4 months and 20 days as of March 1, 1970, your total service retirement credit will amount to 21 years, 11 months and 20 days on October 1, 1975.
“You will complete 25 years of city service on October 11, 1978.”
On November 17, 1976 decedent Mathilda Simon executed an application for final service retirement. In said application decedent elected to cancel her Plan A election in order to receive immediate payments of a lesser retirement allowance under the provisions of Plan B; that is, the age 55 pension plan. In said application, decedent further specified her desire to retire from active service effective as of January 31, 1977. At the time of the filing of this application, decedent was over the age of 55 years but had not completed 25 years of New York City service.
The relevant language of the application reads as follows:
“To the Teachers’ Retirement Board:
“In accordance with the provisions of Chapter 20, of the Administrative Code of the City of New York, I hereby make application for retirement from active ser *511 vice effective the 31 day of January, 1977 or the date immediately following the day of receipt of this application in the event that the day of receipt is subsequent to the date herein mentioned.
“Your retirement allowance and benefits payable to-your beneficiary will be determined under the selection you make on this application. The effective date of your retirement is the day stated above or the day preceding your death, whichever day occurs first.
“I understand that if I am a participant under Plan A, but have not attained Age 55 or have not completed the required 25 years of New York City service, the payment of my retirement allowance will be deferred until the date on which both requirements are met. However, if I have attained Age 55 but have not completed 25 years of New York City (purchased outside service is not, under law, City service) service, I may before the effective date of my retirement cancel Plan A and receive immediate payment of a reduced retirement allowance under Plan B.”
In addition, decedent checked a box on the application form and subscribed to the following:
“to be used by members who wish to cancel
PLAN A IN ORDER TO RECEIVE AN IMMEDIATE RETIREMENT ALLOWANCE
“Since I am not eligible for the immediate payment of a retirement allowance under Plan A (The 20 Year Pension Plan) I elect to cancel my present Plan A election and to receive an immediate payment of a lesser retirement allowance under the provisions of Plan B (Age 55 Pension Plan).
/s/ Mathilda Simon Signature of Applicant”
Decedent Mathilda Simon also selected the maximum retirement allowance on page three of the application for *512 final service retirement. The relevant language of this section of the application reads as follows:
“selection of maximum retirement allowance
Date ....11/17., 1976
“I desire to have the maximum allowance payable during my life without optional modification. This selection will supersede any and all previous selections which may have been filed by me.
[Signature] Mathilda Simon”
Below the box providing for selection of maximum retirement allowance are the instructions which are printed alongside the optional choices. It reads as follows: “consider this matter carefully as no change in optional selection may be made on or after the date on which your retirement allowance begins.”
On page one of the application for final service retirement, paragraph E provides as follows: “E. Any change in the date of retirement or in the form of retirement allowance MUST be made at least one day prior to the effective date of retirement; except that if you retire as a 20 year pension plan member, you may change your election of an option at any time before the date on which your retirement allowance begins.”
At the bottom of page one of the application for final service retirement it reads: “If there is anything in connection with this application which is not clear to you, call at, or write to this office, where authentic information is available at all times.”
The instruction page forming a part of the final service retirement, in pertinent part, provides as follows: “A. If you are a participant under Plan A but have not attained Age 55 or have not completed the required 25 years of New York City service, the payment of your retirement allowance will be deferred until the date on which both requirements are met. However, if you have attained Age 55 but have not completed 25 years of New York City service, you may before the effective date of your retirement cancel Plan A and receive immediate *513 payment of a reduced retirement allowance under Plan B.” Mathilda Simon was, at the time of the filing of her application for retirement, a Plan A member. Accordingly, she applied to change from Plan A to Plan B. Subdivision D on the instruction page provides as follows:
“D. Under subdivision 4 of Section B20-41.0 of the New York City Administrative Code, any election of an option except Option One is deemed to be a Conditional Election providing that if the member dies before the date on which his retirement allowance begins, he is deemed to have died with an Option One election.
“E. Any change in the date of retirement or in the form of retirement allowance MUST be made at least one day prior to the effective date of retirement; except that if you retire as a 20 year pension plan member, you may change your election of an option at any time before the date on which your retirement allowance begins.”
The “note” on the fourth page of the application states in pertinent part:
“If you are a 20-year pension plan contributor and you make such conditional election and die more than 30 days after the effective date of your retirement and before the date 31 days after the date on which your retirement allowance begins, an Option 1 benefit will be payable (New York City Administrative Code, Section B2041.0, subdivisions 2(d) and 4).
“As provided from Section B20-46.0, subdivision c, a member of the 20-year pension plan may change his election of an option at any time before his retirement allowance begins.”
On March 31, 1977, the defendant teachers’ retirement system sent a “Notice of Prospective Retirement” to the plaintiff decedent. The first two paragraphs of this notice read as follows:
“Your application for retirement from active service in the position of Teacher in the Board of Education or Board of Higher Education will be listed on the calendar for action by the Retirement Board subject to receipt of salary record, and verification of salary deductions and service.
*514 “Your retirement is scheduled to take place as of January 31, 1977.”
After receipt of the notice of prospective retirement, the decedent wrote the Teacher’s Retirement Board of the City of New York, under letter dated May 9, 1977. In substance, the letter states that since the board had not acted upon her application for a change of plan from A to B and since she had not received any payment on account of her retirement allowance, she requested a change in her option selection from maximum retirement allowance to Option I designating her son and daughter, Jeffrey Simon and Ellen Sandor as beneficiaries.
The reply decedent received was by letter of Joseph Russo, deputy director of the retirement system dated June 9, 1977. The letter states, in substance, that under the teachers’ retirement law, the selection of a maximum retirement allowance could not be changed subsequent to the effective date of retirement.
In early August of 1977, decedent received a check dated July 31, 1977 in the sum of $3,549.48 payable to Mathilda Simon (decedent) from the teachers’ retirement system. At this time decedent was seriously ill. This check was returned to the retirement system by letter of plaintiff Fred Greene dated August 9, 1977. By letter dated August 17, 1977, the teachers’ retirement system returned this check and stated that the check was based on the computation of the maximum retirement allowance. Said check was returned under letter written by plaintiff Greene dated October 25, 1977.
Mathilda Simon died on August 25, 1977. On September 15, 1977, after her death, the teachers’ retirement board officially acted upon decedent’s retirement application.
At the time of decedent’s death, she was 66 years of age and left surviving her afore-mentioned children, plaintiffs herein.
On February 28, 1978, the Surrogate of Kings County appointed plaintiff Fred Greene as executor under the last will and testament of Mathilda Simon.
*515 On April 20, 1978, a notice of claim was filed upon the City of New York, the teachers’ retirement board and the teachers’ retirement system. On or about August 14, 1978 this action was commenced by service of a summons and complaint. Thereafter, issue was joined by the service of an answer.
The Administrative Code of the City of New York sets out statutory rules for the administration of the teachers’ retirement system. These statutes form the contractual basis of the retirement contract by which both the members and the administrators of the retirement system are bound. (NY Const, art V, § 7; Matter of Ayman v Teachers’ Retirement Bd. of City of N. Y., 9 NY2d 119; Kleinfeldt v New York City Employees’ Retirement System, 36 NY2d 95.)
Pursuant to the Administrative Code, a member of the teachers’ retirement system may not change her form of retirement allowance on or after her effective date of retirement. Section B20-52.0 of the Administrative Code provides that “no beneficiary shall be permitted to change any optional selection after it has become effective”, except in the case of a 20-year pension plan member (Administrative Code, § B20-52.0, subd b) and in the case of a divorce, of a survivor beneficiary (Administrative Code, § B20-52.0, subd c).
Plaintiffs do not dispute that this requirement exists. However, plaintiffs allege that decedent was not barred from changing her form of retirement allowance since (1) the effective date of retirement is the date the retiree receives her first retirement allowance check, or (2) the effective date is the date the board of the teachers’ retirement system affirmatively acts, or (3) that decedent had been a 20-year pension plan member and therefore came within the exception under subdivision b of section B20-52.0 of the Administrative Code.
Subdivision e of section B20-40.0 of the Administrative Code defines the term “effective date of retirement” as this term is used in sections B20-41.0 (which governs all retirement except under the 20-year pension plan) and section B20-41.2 (which governs retirement under the *516 20-year pension plan). The statute expressly states that the effective date of retirement “shall be the date specified in the application as the date for retirement”.
In addition, subdivision 1 of section B20-41.0 of the Administrative Code explicitly provides that: “[a]ny contributor may retire from service upon written application to such board setting forth at what time subsequent to the execution of such application he desires to be retired. Such application shall retire such contributor at the time so specified”.
Thus, the law unambiguously defines the meaning of the phrase “effective date of retirement” as the date on which the member chooses to retire in her retirement application. Furthermore, the statutes mandate that the member must be retired on the date specified in the application, and that the application automatically retires the member as of that date.
Case law has consistently interpreted these statutes, as well as similar statutes in the other city pension funds and systems, to mean that the retirement applications are self-executing as of the date a member specifies in her retirement application. The Court of Appeals has repeatedly rejected contentions similar to plaintiffs’ that the board’s affirmative action is required to effect service retirement. (Matter of Pierne v Valentine, 291 NY 333; Matter of Rogalin v New York City Teachers’ Retirement Bd., 290 NY 664; Matter of Murray v Teachers’ Retirement Bd. of City of N. Y., 258 NY 389; Matter of Creveling v Teachers’ Retirement Bd., 255 NY 364; Rees v Teachers’ Retirement Bd. of City of N. Y., 247 NY 372.)
The decedent Mathilda Simon voluntarily elected to cancel her Plan A coverage in order to receive immediate retirement allowance payments under Plan B. She checked the box on page 2 of the application for final service retirement, the language of which clearly stated that she wished to cancel her retirement allowance under Plan A in order to elect Plan B. She also signed her name thereto. An acknowledgment of the signature also appears on page 2 of the application.
*517 Defendants contend that decedent’s election to retire under Plan B, with immediate payment of retirement allowance benefits, was a logical, natural choice, even though such choice has proven to be improvident by hindsight. However, the fact that decedent made what turned out to be an unwise choice is not sufficient reason to void the pension contract, or to vitiate the statutory scheme of and the actuarially sound procedure employed by the retirement system.
In Ortelere v Teachers’ Retirement Bd. of City of N. Y. (25 NY2d 196, 198), Judge Breitel noted that: “There is no doubt that any retirement system depends for its soundness on an actuarial experience based on the purely prospective selections of benefits and mortality rates among the covered group, and that retrospective or adverse selection after the fact would be destructive of a sound system. It is also true that members of retirement systems are free to make choices which to others may seem unwise or foolhardy.”
In the instant matter, the decedent chose to cancel her Plan A benefits in order to elect Plan B benefits. She made this election prior to her retirement, and before she was aware of her unfortunate illness. In retrospect, that choice seemed unwise. However, the actuarial soundness of the retirement system is based on the assumption that some members will die before their reserve is exhausted while others will collect payments long after their reserve is exhausted. The fact that decedent could not foretell her future is not a basis for this court to ignore or negate the statutory scheme governing the teachers’ retirement system.
Since the decedent did not retire under Plan A and instead retired under Plan B, she was precluded by law from changing her election on or after her effective date of retirement. As a matter of law, the effective date of her retirement was the date she specified in her retirement application, to wit, January 31, 1977.
Plaintiffs assert that the application for final' service retirement is evidence, as a matter of law, of a “negligent misrepresentation” to decedent by defendants. Spe *518 cifically, they claim that defendants negligently misrepresented to decedent the last date on which she was entitled to change her form of retirement.
In order to constitute a finding of negligent misrepresentation, plaintiffs must demonstrate that the language in the application was material and false, and that decedent was induced by, and relied upon such language to her detriment. (Bloomquist v Farson, 222 NY 375; Meyer v Meyer, 201 App Div 596.)
Plaintiffs have failed to demonstrate that the language in the application was false or misleading. The law was correctly stated in the application. Furthermore, the application for final service retirement clearly differentiates between Plan A, the 20-year pension plan, and Plan B, the age 55 pension plan. In addition, the application expressly contrasts the differences between retirement under maximum allowance without optional modification and retirement with a choice of option.
Instruction “A” on page 1 and the language on page 2 of the application unambiguously explain the differences in benefits between Plan A and Plan B. Instruction “E” on page 1 states up to when a member may effectuate a change in her form of retirement allowance, and then qualifies that requirement with the exception that a 20-year pension plan member may make a change up to the date her retirement allowance begins.
The language on page 3 of the application clearly differentiates the difference between maximum retirement allowance and optional elections. At the top of the page, in bold type, it reads: ’’one of the elections below MUST BE COMPLETED IN ORDER TO ELECT EITHER THE MAXIMUM RETIREMENT ALLOWANCE OR AN OPTIONAL ELECTION.”
Decedent elected to retire with the maximum retirement allowance “without optional modification.” On page four of the application, section B20-46.0 of the Administrative Code is reprinted.
The phrase “when retirement allowance begins” is not misleading. The date a member’s retirement allowance begins is the date the member is entitled to receive *519 retirement payments. Since the decedent chose to receive her benefits as of her effective date of retirement, January 31, 1977 was the date her retirement allowance began.
The application repeatedly refers the member to the appropriate statutory provisions in the Administrative Code. The application also advises the member to call or write the retirement system for clarification of any pertinent matter. Pamphlets which describe retirement rights to teachers are freely available for members.
The application for final service retirement does not purport to be a full recitation of the applicable law. Nevertheless, the law that is stated in the application is stated correctly and unambiguously.
The filing of the notice of claim within 90 days after the appointment of the executor is timely pursuant to the tolling provision of CPLR 210.
Accordingly, plaintiffs’ motion for summary judgment is denied. Defendants’ motion for summary judgment dismissing the complaint is granted.